**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| | ) | |
| **JERRELL RUSSELL** | ) | |
| | ) | **No. 20-cv-1163** |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **District Judge Robert M. Dow** |
| | ) | |
| **CITY OF CHICAGO, et al.** | ) | **Magistrate Judge Jeffrey I. Cummings** |
| | ) | |
| **Defendants.** | ) | |
| | ) | |

**<u>MEMORANDUM OPINION AND ORDER</u>**

Plaintiff Jerrell Russell ("Russell") moves pursuant to Federal Rule of Civil Procedure 45(d) to quash defendants' subpoena for three years' worth of phone call recordings made while Russell was incarcerated by the Cook County Department of Corrections ("CCDC"). (Dckt. #61). Defendant City of Chicago and the individual defendant police officers (collectively, "defendants") filed a joint response (Dckt. #65), to which plaintiff replied (Dckt. #66). For the reasons below, Russell's motion to quash the subpoena is granted in part and denied in part.

**I.     Background**

Russell maintains he was wrongly incarcerated for more than three years on unsupported murder and battery charges. Specifically, he was arrested on September 2, 2015, accused of murdering one person and injuring two others after shooting into a car, and held without bond in the CCDC through the conclusion of his trial. At Russell's trial, two witnesses who had previously identified Russell in a line-up (Marisol Claudio and Catherine Olivares) recanted and testified that they had never seen the shooter's face. Russell was released on February 19, 2019, after he was found not guilty of all charges at the conclusion of his trial in state court. (Dckt. #1

1

at 4).  Russell filed this lawsuit on February 18, 2021, bringing claims concerning a due process

violation, conspiracy, malicious prosecution, intentional infliction of emotional distress, and

indemnification.  (*Id.*).  On July 31, 2020, defendants notified Russell's counsel of a subpoena

they intended to serve on CCDC.  (Dckt. #61-1).  Russell objected to the portion of the subpoena

that sought all telephone call recordings and phone logs from his  time in CCDC custody.  (Dckt.

#65 at 3).

## II.    Legal Standard

Federal Rule of Civil Procedure 26 allows for discovery of "any nonprivileged matter

that is relevant to any party's claim or defense and proportional to the needs of the case."

F.R.Civ.P. 26.  Under Federal Rule of Civil Procedure 45(a), a party may issue a subpoena to

command production of documents in a person's possession or control.  Fed.R.Civ.P. 45(a).  A

district court must quash or modify a subpoena that requires disclosure of privileged or otherwise

protected material (if no exception or waiver applies) or subjects a person to undue burden.

Fed.R.Civ.P. 45(d)(3).  The party seeking to quash a subpoena bears the burden of demonstrating

that such conditions apply.  *Wauchop v. Domino's Pizza, Inc.*, 138 F.R.D. 539, 543 (N.D.Ind.

1991).  Magistrate judges "enjoy extremely broad discretion in controlling discovery."  *Jones v.

City of Elkhart*, 737 F.3d 1107, 1115 (7th Cir. 2013).

## III.    Analysis

### A.    Russell has standing to challenge defendants' subpoena.

Before the Court may exercise its authority under Rule 45(c) it must address the threshold

issue of standing.  If standing is established, the Court must then "balance the burden of

compliance on Plaintiff's privacy interests against the benefit of production of the material

sought."  *Pursley*, 2020 WL 1433827, at *2.  Ordinarily, for a moving party to have standing to

2

move to quash a subpoena issued to a non-party, the subpoena must infringe upon the moving party's "legitimate interests." *United States v. Raineri*, 670 F.2d 702, 712 (7th Cir. 1982). Such interests are implicated when the movant has a claim of privilege attached to the information or when the subpoena infringes on the movant's privacy interests. *Simon v. Northwestern Univ.*, No. 1:15-CV-1433, 2017 WL 66818, at *2 (N.D.Ill. Jan. 6, 2017). Even a minimal privacy interest is sufficient to establish standing for a motion to quash. *DeLeon-Reyes v. Guevara*, No. 1:18-cv-01028, 2020 WL 7059444, at *2 (N.D.Ill. Dec. 2, 2020).

It is no secret that jail authorities monitor and record phone calls made by the incarcerated persons under their supervision. Indeed, inmates in the CCDC are warned in the inmate handbook and in other ways that their calls are being monitored/recorded, *see Bishop v. White,* No. 16 C 6040, 2020 WL 6149567, at *4 (N.D.Ill. Oct. 20, 2020), and Russell does not argue otherwise. (Dckt. #61 at 2). Consequently, it is beyond dispute that incarcerated persons do not have the same expectation of privacy with respect to their calls that the general public enjoys. *Id.* Nonetheless, courts in this District have reasoned that even when individuals know their calls will be monitored by prison officials, they likely would not expect that recordings of those calls would be turned over to an adverse party in a civil case. *See, e.g., Simon*, 2017 WL 66818, at *2 ("This court doubts . . . Simon anticipated his remarks to a friend about the weather, slights uttered in a heated lover's quarrel, or any unrelated conversation ranging from the most benign topics (the former) to the most intimate (the latter) would find its way as an exhibit in this lawsuit."). For this reason, courts have held that "an incarcerated individual possesses a sufficient privacy interest in the recordings of her phone calls, such that she has standing to quash a subpoena for those recordings." *DeLeon-Reyes*, 2020 WL 7059444, at *2 (citing cases).

In this case, Russell has referenced – albeit briefly – his concern regarding the personal nature of the calls he had with his family and friends while he was held in pretrial detention at the CCDC. (Dckt. #66 at 4). Moreover, defendants do not argue that Russell had any expectation that recordings of his pretrial calls would be turned over to his adversaries in post-trial civil litigation. *Cf. Velez v. City of Chicago*, No. 18 C 8144, 2021 WL 3231726, at *4 (N.D.Ill. July 29, 2021) (finding that plaintiff had not established a privacy interest in recorded calls where it was clear from the content of the calls that "litigation was in mind" and plaintiff made no "showing whatsoever" as to the "intimacy" and "sensitivity" of the calls in question). Consequently, this Court likewise concludes that Russell has cleared the relatively low bar of showing that he has a sufficient privacy interest in the phone calls to provide him with standing to challenge defendants' subpoena. *See, e.g., Bishop*, 2020 WL 6149567, at *3 (a minimal privacy interest in recorded calls is sufficient to vest plaintiff with standing to challenge a third-party subpoena); *Third Degree Films, Inc. v. Does 1-108*, No. 11-3007, 2012 WL 669055, at *2 (D.Md. Feb. 28, 2012) ("parties need only have '*some* personal right or privilege in the information sought' to have standing to challenge a subpoena to a third party.") (citation omitted).

### B.      Defendants are entitled to the production of Russell's prison call log.

Although Russell initially objected to the production of his CCDC call log (a list of all of the recorded calls he made while in custody), he did not address this objection in his motion to quash. In his reply, he clarified that he does not "strenuously object to the subpoena for the Call Logs themselves." (Dckt. #66 at 7). Call logs are routinely produced under similar circumstances. *See, e.g., Bishop*, 2020 WL 6149567, at *7 (ordering production of prison call log where plaintiff did not object). The Court finds that defendants here similarly have a right to

4

obtain the call log from the time Russell was held in pretrial detention in the CCDC between September 2, 2015, and February 19, 2019.

> ### C. Defendants have made a sufficient showing to establish that relevant information may be found in the recordings of Russell's calls with certain specified individuals.

Once standing is established, courts weigh "the privacy interests of the person seeking to quash the subpoena against the relevance and benefit of the information sought." *Rodriguez v. City of Chicago*, No. 18-cv-7951, 2021 WL 2206164, at *1 (N.D.Ill. June 1, 2021). As noted above in Section III(A), Russell's privacy interests in the calls that he knew were being monitored and recorded are minimal. Accordingly, the burden this subpoena imposes on those interests is not substantial. As for the subpoena's relevance, two main factors separate a permissible subpoena from one that is overbroad: (1) previously discovered evidence supporting the claim that relevant information will be found in the documents sought, and (2) the "narrow tailoring of the subpoena to reflect that discovered evidence." *DeLeon-Reyes*, 2020 WL 7059444, at *5; *Rodriguez*, 2021 WL 2206164, at *3. The evidence presented by a party seeking prison phone records need not be extensive. *See Northwestern Mem'l Hosp. v. Ashcroft*, 362 F.3d 923, 931 (7th Cir. 2004) ("[P]retrial discovery is a fishing expedition and one can't know what one has caught until one fishes."). The party must, however, "offer more than mere speculation that the recordings could house relevant evidence." *DeLeon-Reyes*, 2020 WL 7059444, at *5.

### 1. Relevant information may be found in the recordings of calls between Russell and his family members.

Here, Russell disclosed eight family members who know about his whereabouts at the time of the shooting and the damages he suffered as a result of the subsequent prosecution.[1] (Dckt. #65-5).  The Court agrees with defendants that Russell's identification of these individuals as people who possess discoverable information indicates that his recorded conversations with them are likely relevant.  *See Rodriguez*, 2021 WL 2206164, at *2 ("Plaintiff himself has listed these individuals as people with information [that] is relevant to his case, which qualifies as an indication that the recordings would probably contain relevant information.").  Furthermore, Russell acknowledged in his interrogatory responses that he has discussed matters related to his claims with these family members.  (Dckt. #66 at 5).  Although he did not specify when and through what channel those conversations took place, this admission still weighs in favor of disclosure.  *See Coleman v. City of Peoria*, No. 15-cv-1100, 2016 WL 3974005, at *2 (C.D.Ill. July 22, 2016) (deposition testimony showed that the plaintiff had called his co-defendants and witnesses about relevant subject matters).

### 2. Relevant information may be found in recordings of calls between Russell and his attorney.

Russell does not contend that the recorded conversations between him and his attorney, Michael Krejci, are protected by attorney-client privilege.[2]  (Dckt. #66 at 5).  Rather, he notes

---

[1] The listed family members are Ethel Russell, Benjamin Russell, Antoinette Russell, Sugoria Russell, Lisa Russell, Shamira Russell, Sherri Russell, and Arianna Figeros.

[2] Such an argument would lack merit.  Although the Seventh Circuit has not ruled on this question with regard to the attorney-client privilege, the Court has held that the otherwise applicable marital communication privilege does not apply during recorded prison calls due to the lack of confidentiality that is inherent in such communications. *United States v. Madoch*, 149 F.3d 596, 602 (7th Cir. 1998). Furthermore, multiple other Circuits as well as courts in this District have found that the attorney-client privilege is waived when individuals speak with their attorneys on phone calls they know are being

6

that defendants have not presented evidence to show that Russell ever spoke to his attorney on a recorded line.  Point taken.  However, Russell acknowledges that: (i) he spoke with his attorney during his period of incarceration; (ii) his initial disclosures identify attorney Krejci as a person with knowledge of the criminal proceedings against him and his conversations with Krejci were most certainly about this relevant topic; and (iii) he does not recall – one way or the other – whether he had such relevant conversations with his attorney *on the recorded phone system*. (Dckt. #65-5 at 2; Dckt. #66 at 5).  Defendants have made a sufficient showing to obtain the recordings of any calls Russell had with his attorney if, in fact, any such recordings exist. *Rodriguez*, 2021 WL 2206164, at *3.

> **3.     Relevant information may be found in the recordings of calls between Russell and witnesses to the shooting if any such recordings exist.**

In his initial disclosures, Russell identified prosecution witnesses Jowan Atkins, Marisol Claudio, Adam Ocasio, Jocelyn Carranza, Tommy Glover, Abel Heredia, Samuel Lord III, Catherine Olivares, Bivana Patino, and Victoria Bauer-Spivey as individuals with information on "how they were approached by police officers, their involvement in the investigation, and [the] manner in which the investigating officers conducted their investigation."  (Dckt. #65-5 at 4). Defendants argue that any recorded calls from Russell to Ms. Claudio and Ms. Olivares would be particularly relevant because they may indicate whether the women changed their accounts of the shooting "out of fear of reprisal by Plaintiff."  (Dckt. #65 at 10).  The Court agrees and Russell does not dispute the relevance that any such recorded calls with these witnesses would have.[3]

---

recorded.  *Pursley v. City of Rockford*, No. 18 CV 50040, 2020 WL 1433827, at *4 (N.D.Ill. Mar. 24, 2020) (citing cases).

[3] Since there is no connection between Russell and these prosecution witnesses aside from what they purportedly witnessed regarding the shooting incident at issue, any conversation between Russell and these witnesses would presumably concern this highly relevant topic.

Thus, defendants have made a sufficient showing to obtain recordings of any calls between Russell and these witnesses. *Rodriguez*, 2021 WL 2206164, at *3.

However, Russell asserts that there are no such recorded calls because he has had just one conversation with only one of the prosecution witnesses while he was on the street, after he was released from pretrial detention, and that he had no other conversations with any of them while he was in the CCDC or anywhere else. (Dckt. #66 at 5). Defendants, for their part, have not established that there were any recorded calls between Russell and the prosecution witnesses because they have not been granted access to Russell's call log. If Russell is correct, the CCDC will have no recorded calls with these witnesses to produce and he will suffer no prejudice by the Court's ruling on this point. If Russell's memory is not completely accurate and there are any recorded calls between him and one or more of the prosecution witnesses, the recordings must be produced to defendants pursuant to their subpoena.[4]

### D. Defendants' subpoena is otherwise overbroad.

Defendants' subpoena, as written, seeks the production of *all* of Russell's recorded calls between September 2, 2015, and February 19, 2019. The record contains no evidence regarding the identity of all persons who were parties to such calls, the subject matter of such calls, or the total number of such calls. It is possible that there are dozens (or perhaps hundreds) of recorded calls between Russell and unknown others that even defendants would concede are wholly irrelevant to the parties' claims or defenses in this case. Consequently, the Court finds that defendants' subpoena is overbroad to the extent that it seeks recordings of calls other than those

---

[4] As the Court noted in preceding sections of this opinion, Russell does not claim that he has an unequivocally clear memory regarding whether he had recorded calls with other prospective witnesses and the content of any such calls he had. This is understandable. The calls in question occurred between three and six years ago and Russell has experienced important events (such as his acquittal at his criminal trial and his release from pretrial detention) in the interim.

8

identified above in Section III(C). *See, e.g., Simon*, 2017 WL 66818, at *4 (subpoena seeking all calls placed over a fifteen-year period was overbroad); *Bishop*, 2020 WL 6149567, at *3 (subpoena encompassing all calls over a four-year period was overly broad); *Pursley*, 2020 WL 4815946, at *1 (subpoena seeking six years' of calls was overly broad). Defendants' "blunderbuss" request for the production of *all* for Russell's recorded calls over the three-plus years he was held in pretrial detention "unreasonably tramples on [p]laintiff's even minimal privacy interests." *Bishop*, 2020 WL 6149567, at *4, 7. Consequently, defendants' subpoena is quashed to the extent that it calls for the production of materials beyond what is permitted in Sections III(B) and III(C) of this opinion.

## CONCLUSION

For the foregoing reasons, Russell's motion to quash defendants' subpoena (Dckt. #61) is granted in part and denied in part.

ENTERED:   February 1, 2022

**Jeffrey I. Cummings**
**United States Magistrate Judge**